UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-260-H

KFC CORPORATION                                                    PLAINTIFF

v.

JRN, INC.                                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, the KFC Corporation ("KFC"), brought this action for breach of contract, unfair
competition, and misappropriation of trade secrets, and federal trademark claims under the
Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(c).  Defendant, JRN, Inc. ("JRN"), is one of
the largest franchisees in KFC's global restaurant system, operating approximately 180 KFC
restaurants mostly in the southeastern United States.

At bottom this is a breach of contract case in which KFC seeks to close down ten JRN-
operated franchise stores.  The precise contractual dispute concerns the extent of JRN's
obligations to remodel these ten stores.[1]  Having issued notices of default and termination of the
franchise agreements governing the restaurants at issue, KFC has moved for a preliminary
injunction to enjoin JRN from operating its restaurants as KFC locations and using any KFC
trademarks or trade secrets.  Fed. R. Civ. P. 65(a).

At a hearing on the motion for a preliminary injunction, KFC put forward several
witnesses and a raft of contracts, letters and emails detailing the several decades long
relationship between KFC and JRN.  The Court issued a version of this Memorandum in draft

---

[1] At issue in this case are JRN's obligations to remodel under ten separate but identical franchise
agreements.

form and set a conference to discuss the case.  Prior to the conference, Plaintiffs moved to

withdraw its request for a preliminary injunction.  However, because KFC had already

completed most of its case and the Court believed itself fully advised, JRN seems entitled to a

ruling in its favor at this stage.  It goes without saying that the denial of this motion is without

prejudice to the Court's subsequent consideration of the request for a permanent injunction.

I.

The Court will briefly summarize the events which unfolded to create the current dispute.

Over the years, one can see a constant tug-of-war between KFC and its franchisees.  KFC

wanted leverage to require renovation of existing stores; the franchisees wanted longer-term

franchise agreements and more flexibility in managing capital expenditures.  Quite obviously,

matters have arrived at a critical impasse when KFC feels compelled to terminate an otherwise

profitable and compliant franchisee due to a failure to perform store renovations.

In 1989, a group of franchisees brought a class action lawsuit to prevent KFC from

changing its standard franchise agreement.  As part of the settlement of that suit in 1997,

franchisees could renew their franchises for a twenty-year term by signing a new agreement (the

"Early Renewal Agreement").  In consideration for this extended lease term, the Early Renewal

Agreement required, among other things, that a franchisee remodel its restaurant by ten years

into the lease.  The parties refer to these obligations as "Exhibit A" requirements.[2]

JRN exercised its twenty-year renewal option on its ninety-three franchises, obligating it

to remodel these restaurants by June 2008.  In subsequent years, JRN acquired many additional

restaurants from both KFC and other franchisees.  It also built new restaurants.  Many of the

---

[2] The reference is to Exhibit A of the Early Renewal Agreement, which contains the remodel obligation.

acquired restaurants were subject to Early Renewal Agreements and the same 2008 remodel deadline.

In 2001, JRN and KFC executed an agreement releasing JRN from the Exhibit A requirements and establishing a new timetable for remodeling restaurants (the "Remodel Agreement"). Instead of a single 2008 deadline for all restaurants, the Remodel Agreement provided for renovation of six restaurants in 2001, eight in 2002, ten in 2003, twelve in 2004, twelve in 2005, sixteen in 2006, sixteen in 2007, eighteen in 2008, ten in 2009, six in 2010, and six in 2011. It set monetary penalties for any shortfalls in upgrading and JRN's failure to comply would give KFC the right to terminate the agreement. It also required modifications or waivers of the Agreement to be made in writings signed by both parties.

In June 2003, the parties executed an agreement to supplement and amend the Remodel Agreement (the "2003 Letter Agreement"), which added to the Remodel Agreement's timetable any restaurant JRN subsequently acquired. Instead of an Exhibit A remodel deadline of 2008, the restaurants would be evenly distributed across the timetable, with no cap as to how many remodels the 2003 Letter Agreement could require in a single year.[3] The more restaurants JRN acquired, the more its remodel requirements under the Remodel Agreement increased.

The 2003 Letter Agreement also allowed JRN to count any acquired restaurant already meeting what KFC called "S-6000 image" as being remodeled. Under this arrangement, the newly-acquired remodeled restaurants would reduce JRN's obligations under the Remodel

---

[3] The 2003 Letter Agreement specified a methodology for adding new restaurants to the Remodel Agreement's timetable. The rule was to skip the year of purchase, then remodel one restaurant every other year, returning to the odd years out after reaching 2011. Thus, if JRN acquired seven new restaurants in 2003, the yearly remodel requirements would increase by one for each of the following years, in this order: 2004, 2006, 2008, 2010, 2005, 2007, and 2009. Thus, where the Remodel Agreement originally required twelve remodels in 2004, JRN would now have to do thirteen remodels, and so on.

Agreement.  For example, if JRN's acquisitions increased its 2005 remodel obligation from twelve (per the Remodel Agreement timetable) to fourteen, then JRN could count up to two acquired S-6000 image restaurants towards this obligation.  Alternatively, JRN could choose to remodel fourteen restaurants and save these so-called "S-6000 credits" for future years' obligations.

Beginning October 2005, the parties exchanged communications concerning JRN's current and future remodeling projects as well as proposals to alter the remodeling timetable as established by the Remodel Agreement and 2003 Letter Agreement.  They discussed abandoning the 2003 Letter Agreement's "odd / even process" for folding new acquisitions into the original remodel timetable and instead adding those acquisitions to the requirements for 2009, 2010, and 2011, subject to a cap at fifteen remodels per year.  One e-mail from KFC proposed eliminating the S-6000 credits starting in 2006.  Subsequent communications referenced a pace of fifteen remodels per year, as did a 2007 Asset Purchase Agreement in which JRN acquired KFC-owned restaurants in two markets.[4]

In 2010, KFC asserted that JRN failed to meet its upgrade obligations for 2008 and 2009 and noted that it had terminated the Remodel Agreement in April.  KFC also stated that it was willing to enter into a new remodel agreement in 2011, provided JRN complete thirteen remodels in 2010.  JRN did not complete thirteen remodels and on January 24, 2011 KFC sent notice that JRN had defaulted on the Franchise Agreements for ten of its restaurants.  A notice of termination followed in March.  The parties attempted to negotiate an agreement to reinstate the

---

[4] Section 10.12 of the Asset Purchase Agreement reads in relevant part: "Seller agrees that the upgrades of the Restaurants through 2011 in accordance with the terms hereof and Schedule 10.12 will count toward Purchaser's obligation of 15 upgrades per year through 2011 under Purchaser's current Remodel Agreement with KFC."

terminated Franchise Agreements, but did not reach a resolution.  KFC filed this lawsuit on April

29, 2011 and the instant motion two months later.

II.

To obtain the extraordinary relief of a preliminary injunction, KFC must show that it:  (1)

has a strong likelihood of success on the merits; (2) would suffer irreparable injury without the

injunction; (3) issuance of the injunction would cause substantial harm to others; and (4) the

public interest would be served by issuance of the injunction." *Rock & Roll Hall of Fame &*

*Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998).

KFC's basic thesis is so straightforward and determinative that it demands consideration

at the outset.  KFC says that JRN breached the Remodel Agreement, leading to its termination

and revival of the Early Renewal Agreements, which required upgrades by 2008.  Indeed, JRN

did not remodel all of the ten restaurants in question.  Under KFC's line of argument, this failure

constitutes a breach of the underlying Franchise Agreements.  This in turn means that JRN is

using KFC's exact trademarks without permission, which is a Lanham Act violation.

KFC contends that the generally accepted law as exemplified by this Court's decision in

*Papa John's Int'l, Inc. v. Specktacular Pizza, Inc.*, No. 3:05-CV-515-H, 2005 WL 3132337

(W.D.Ky. Nov. 21, 2005) requires issuance of an injunction in these circumstances.  In *Papa*

*John's* the franchisee had breached its franchise agreement by refusing to pay contractually-

required advertising fees. *Id.* at \*3-4.  The Court rejected Specktacular Pizza's argument that it

was justified in withholding performance on the franchise agreements because Papa John's

breached the agreements first.[5]  Specktacular's breach made Papa John's termination of the

agreements proper, creating a strong likelihood of success on the merits.

Here, JRN does not argue that it has withheld performance based on a prior KFC breach;

rather, it denies breaching its Franchise Agreements at all.  If this is so, the termination would be

without a proper basis and an injunction would be unwarranted.  *McDonald's Corp. v.

Robertson*, 147 F.3d 1301, 1308 (11th Cir.1998) (*citing S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968

F.2d 371 (3d Cir.1992).

However, KFC's line of argument assumes it has already established JRN's contractual

renovation requirements.  The problem for KFC lies in identifying the particular terms governing

the agreement JRN allegedly breached.  Establishing such terms is a prerequisite to finding a

strong likelihood KFC will prove a breach of contract and proper termination of the Franchise

Agreements.  Although some agreement certainly existed between the parties, determining all its

material terms is quite difficult.  Thus, unlike in *Papa John's*, the existence of the contractual

breach is the central and unresolved dispute in this case.

III.

KFC's likelihood of success of showing a breach of contract relies upon two legal

conclusions: (1) that the parties amended the Remodel Agreement through a series of e-mails

and letters which capped JRN's yearly remodel requirements but eliminated the use of S-6000

credits in the formula; and (2) that the Early Renewal Agreements and the Remodel Agreement

bar JRN from asserting the application of Section 6.2 of the Franchise Agreement, which says

---

[5] The appropriate remedy for a franchisee in this situation is to sue for damages on the franchisor's breach. The franchisee cannot have it both ways, withholding its performance on the contract but seeking to enforce its contract rights to use the franchisor's trademarks.

that KFC may not impose an undue economic burden on its franchisees.  Evaluating the first

contention is sufficient to resolve the pending motion.

JRN's renovation of various restaurants and its failure to renovate others are undisputed.

The factual disputes concern whether the parties agreed in writing to amend the Remodel

Agreement and, if so, upon what new terms did they do so.  Where the Court finds the various

written exchanges present ambiguous meanings, it must determine whether the parties reached

any agreement at all and whether they agreed upon the particular terms KFC asserts.  *Equitania*

*Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006); *Langley v. Prudential*

*Mortg. Capital Co., LLC*, 546 F.3d 365, 368 (6th Cir. 2008).  Also, "[u]nder Kentucky law, any

subsequent modification or abandonment of a written agreement must be proven by clear and

convincing evidence."  *Thomas & King, Inc. v. Jaramillo*, No. 08-191-JBC, 2009 WL 649073, at

*6 (E.D. Ky. Mar. 10, 2009) (citing *Dalton v. Mullins*, 293 S.W.2d 470 (Ky. 1956)).  At this

juncture the Court's task is to determine whether it can make such a determination on the limited

evidence presented.

## A.

First, the terms of the Remodel Agreement as it stood in 2010, the year KFC declared

that agreement terminated, seem ambiguous.[6]  The Remodel Agreement, as amended by the June

2003 Letter Agreement, allowed JRN to accumulate credits for each newly acquired restaurant

already meeting the S-6000 image standard.  JRN could use those credits to satisfy the portion of

its remodel requirements incremental to the number established in the Remodel Agreement.  The

---

[6] KFC premised termination of the Franchise Agreements on JRN's default under the 1997 Early Renewal
Agreements, which revived by termination of the 2001 Remodel Agreement, KFC argues.  Thus, JRN's alleged
breach of the Remodel Agreement is a key issue.

parties agree they did amend JRN's basic obligations under the Remodel Agreement to end the

uncapped "odd /even" method of folding new acquisitions into the remodel requirements.  The

new agreement required JRN to complete fifteen remodels per year from 2008 - 2011, allowing

for two closures.

KFC says that, in addition to changing the number of required remodels, the parties also

eliminated the S-6000 credits.  It claims the credits were not part of the new method to which the

parties agreed: adding new acquisitions to the post-2008 years' requirements, capped at fifteen

remodels per year.  JRN contends that the continuing validity of these credits – they claim to

have had more than twenty-one available – precludes finding JRN materially breached the

Remodel Agreement.

The record of correspondence shows that KFC did propose eliminating the S-6000

credits.  But, the current record is void of any letter or e-mail from JRN specifically agreeing to

eliminate the S-6000 credits provision.  At best, the various email exchanges create ambiguity.

For example, in response to KFC's November 2005 e-mail proposing a new remodeling schedule

and eliminating S-6000 credits, JRN agrees to the new remodeling schedule,[7] proposes a

reduction in penalties, and is silent as to S-6000 credits.  KFC responds that it is in agreement

with the "revised" Remodel Agreement, but with enumerated exceptions (e.g. rejecting the

reduction in penalties) and clarifications (future store divestitures from KFC to JRN will not be

part of the Remodel Agreement).  There is no further clarification of the status of S-6000 credits.

Given this ambiguity, the Court is left only with the subsequent course of dealing among

---

[7] Unlike the proposed elimination of S-6000 credits, the change in the remodeling schedule to a capped fifteen-per-year pace for 2008 - 2011 is clear in the written exchanges and in the parties' subsequent conduct.  An unrelated 2007 agreement between the parties references the fifteen-per-year pace. *See supra*, note 4.

the parties to determine whether they reached such an agreement. *See Martin v. Ben P. Eubank*

*Lumber Co.*, 395 S.W.2d 385, 386 (Ky. 1965) (noting course of dealing may explain ambiguities

in a contract).  Currently, KFC's primary course-of-dealing evidence is that JRN did not attempt

to use S-6000 credits where such use might have been expected if the credits were still valid.

JRN's witnesses would deny any agreement as to credits.  The Court has considered all this

evidence but finds it insufficient to prove the parties agreed to eliminate S-6000 credits.

The Court finds that the uncertainty concerning these key contract terms alone is a

sufficient roadblock to granting the preliminary injunction.

B.

Even should KFC prevail on its contractual argument discussed above, JRN argues

Section 6.2 of the Franchise Agreements applied at all times to the remodeling requirements

under the relevant Early Renewal Agreements and the Remodel Agreement as amended.  Section

6.2 of the Franchise Agreements reads in relevant part:

> "Franchisee shall from time to time abide by any reasonable requirement of KFC
> with regard to the remodeling and upgrading of the Outlet to comply with
> standards then applicable to new franchises and stores owned by KFC and its
> affiliates, provided, however, that such requirements shall not impose an undue
> economic burden."

JRN contends factual issues, like the economic burden posed by remodeling these restaurants

and the image standards KFC has applied to other franchisees and corporate-owned restaurants,

warrant further discovery.

KFC makes three arguments why Section 6.2 does not control this case.  First, Section

6.2 only applies to "time-to-time" remodeling requirements KFC might unilaterally impose, not

the date-certain remodeling requirements to which the parties agreed in the Early Renewal

9

Agreements and Remodeling Agreement.  Second, Exhibit A to the Early Renewal Agreement

supersedes any effect of Section 6.2 by providing that the "Franchisee shall be required to

remodel and upgrade" a restaurant by a certain date, "[n]otwithstanding any other provision in

the Franchise Agreement."  Third, KFC argues the Remodel Agreement supersedes Section 6.2

because it does not incorporate the Franchise Agreements by reference and is a later agreement

related to remodeling required upon renewal of a franchise.  Although KFC argues that Section

6.2 is completely irrelevant to this dispute,  it acknowledges that further discovery and

consideration of it may be necessary.

   The Court has considered Section 6.2, but it has neither sufficient information nor

necessity to set out a definitive opinion at this time.  The following discussion shows the current

motion can be resolved on other grounds.

IV.

   The Court is mindful that no factor of the preliminary injunction analysis is singularly

dispositive and that it must balance the four criteria to guide its discretion, rather than apply

them as rigid prerequisites.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,

511 F.3d 535, 542 (6th Cir. 2007) (*citing Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir.

2003)).  However, given KFC's shortcoming in demonstrating likely success on the merits,

evidence on the other factors must be particularly compelling to warrant an injunction.  It is not.

   KFC argues that the Court may presume irreparable harm because this is a trademark

matter.  *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381-82 (6th Cir.

2006) (applying irreparable harm presumption in a Lanham Act case).  JRN counters that the

Supreme Court's decision in *ebay, Inc. v. Mercexchange, LLC*, 547 U.S. 388 (2006) undermines

10

this presumption.[8]  The Court need not decide whether the presumption must be strictly applied

in Lanham Act cases.  *Compare Lorillard*, 453 F.3d at 381 (post-*ebay* case applying

presumption) *and Microsoft Corp. v. McGee*, 490 F.Supp. 2d 874, 882 (S.D. Ohio 2007) (same)

*with Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *ebay* and making particular

finding of irreparable harm).  The presumption applies where plaintiffs have demonstrated a

strong likelihood of showing how defendants infringed upon their trademarks.  Here, KFC has

not yet made such a showing.  Even if the presumption is still valid in the Sixth Circuit, it does

not apply here.

Some of these restaurants at issue have been remodeled to some degree while the others

have the same image as other KFC restaurants, including corporate-owned locations.  KFC has

not demonstrated that the look, operation or condition of these ten restaurants is such that KFC

suffers harm from their continued existence.  Indeed, KFC continues to receive royalty payments

from these ten JRN restaurants and has inspected them since filing this lawsuit.  Moreover,

closing these ten restaurants would cause a substantial harm to JRN and its employees, while

serving no identifiable public interest.  For all these reasons, KFC has failed to meet its burden at

this stage of the proceedings.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion to withdraw its Motion for

Preliminary Injunction is DENIED.

---

[8] In *ebay*, the Supreme Court rejected the use of a categorical presumption in a permanent injunction
analysis for a Patent Act case.  *Id.* at 393-94.  Lower courts have since applied the *ebay* reasoning to other
intellectual property suits.  *See, e.g. Salinger v. Colting*, 607 F.3d 68, 76 (2d Cir. 2010) (vacating an injunction in a
copyright case because *ebay* abrogated the presumption).  The Sixth Circuit and other district courts within this
Circuit have continued to apply the presumption in some cases while applying *ebay* analysis in others.

IT IS FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction is

DENIED.

The parties should submit a joint litigation plan.

cc:     Counsel of Record